Stephen T. COX and Peter N. Molligan in their capacity as trustees of the Hoberg, Finger, Brown, Cox & Molligan, a Professional Corporation Money Purchase Pension Plan and the Hoberg, Finger, Brown, Cox & Molligan, a Professional Corporation Profit Sharing Plan, Plaintiffs,

v.

Bateman EICHLER, Hill Richards Incorporated, a Delaware corporation, and Robert W. Rowell, Defendants.

No. C–90–1589 MHP.

United States District Court, N.D. California.

Oct. 25, 1990.

Kirke M. Hasson, Shawn Hanson, Kim Zeldin, Pillsbury Madison & Sutro, San Francisco, Cal., for plaintiffs.

James Burns, Kevin P. Muck, Brobeck Phleger & Harrison, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiffs, trustees of an employee pension and profit sharing plan, bring this action against a brokerage firm and one of its account executives alleging breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.; violations of federal and state securities laws; breach of contract; violations of state corporations law; and common law negligence, fraud, and breach of fiduciary duty. All allegations are based upon defendants' conduct in the management of benefit plan funds.

The parties are now before the court on the defendants' (1) motion to dismiss all claims in plaintiffs' complaint excepting the claim for breach of ERISA fiduciary duty and (2) motion to strike plaintiffs' prayer for punitive damages under ERISA.

Having considered the submissions and arguments of the parties, for the following reasons, the court (1) GRANTS in part and DENIES in part defendants' motion to dismiss and (2) DENIES defendants' motion to strike plaintiffs' prayer for punitive damages under ERISA.

## BACKGROUND

Plaintiffs Stephen Cox and Peter Molligan are trustees of (1) Hoberg, Finger, Brown, Cox & Molligan, a Professional Corporation Money Purchase Pension Plan and (2) Hoberg, Finger, Brown, Cox and Molligan, a Professional Corporation Profit Sharing Plan ("the Plans"); the Plans are ERISA contribution plans as defined in 29 U.S.C. § 1002(34). Defendant Bateman Eichler, Hill Richards ("BEHR") is a Delaware corporation and member of the National Association of Securities Dealers, Inc. Defendant Rowell is an account executive of BEHR.

In August 1989, Cox and Rowell met to discuss the possible retention of defendants as investment advisors and managers for the Plans. After presenting a proposed investment portfolio consistent with the Plans' conservative investment objectives, defendants were retained as advisors and investors and given discretion to invest the Plans' funds consistent with plaintiffs' guidelines and instructions. Plaintiffs allege that these instructions specified (1) that at all times, at least $1 million of the Plans' funds (amounting to approximately $1.4 million in August 1989) be invested in nonequity investments and (2) that transactions in common stock would be made only in stocks with a Standard and Poors rating of A — or better. Defendants were advised on several occasions of the Plans' conservative objectives and of these limitations on their discretionary authority.

Plaintiffs allege that defendants disregarded these guidelines and instructions, and that in March 1990, defendants removed $500,000 from nonequity investments in order to purchase large amounts of speculative corporate stock. This unauthorized purchase included, but was not limited to, the purchase of stock in Network Equipment Technologies and in Gar-net Resources Corp., neither of which had a Standard and Poors rating of A — or better.

As a result of these transactions, plaintiffs claim that they were exposed to significant financial risk and suffered monetary damage.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987).

On any other motion to dismiss under Rule 12(b), the court may consider matters outside the pleadings, but must accept as true all material allegations of the complaint and construe the complaint in favor of the plaintiff. *See* Fed.R.Civ.P. 12; *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–207, 45 L.Ed.2d 343 (1975) (considering the issue of standing). Each ground for dismissal will be considered in turn.

## DISCUSSION

### I. ERISA PREEMPTION.

Defendants have argued that plaintiffs' common law causes of action for breach of fiduciary duty, fraud, deceit, negligence, and breach of contract should be dismissed because they are preempted by ERISA. Section 514(a) of ERISA states that ERISA

"shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

Plaintiffs have pleaded causes of action under both ERISA and state common law based upon the same alleged misconduct. In their opposition to defendants' motion to dismiss state law claims on the ground of ERISA preemption, plaintiffs assert that they are entitled to assert the ERISA and common law claims in the alternative under Rule 8(e)(2) of the Federal Rules of Civil Procedure, even if these claims are mutually exclusive. Plaintiffs argue that they should be permitted to argue other theories of liability if their first cause of action for breach of ERISA fiduciary duty fails.

■■■■ Plaintiffs are asking for "two bites of the apple": if ERISA preempts their state law claims but plaintiffs do not prevail on their ERISA claim, they want to preserve the opportunity to try again under the preempted state law theories. However, plaintiffs may not assert preempted state law claims, even in the alternative; if ERISA operates to preempt plaintiffs' state law claims, preemption is mandatory. "[P]laintiff[s] cannot use the rules allowing alternative pleading as a defense to defendant[s'] motion to dismiss." *Pane v. RCA Corp.*, 667 F.Supp. 168, 172 (D.N.J.1987), *aff'd*, 868 F.2d 631 (3d Cir.1989) (granting defendant's motion to dismiss state law claims asserted under Rule 8 on grounds of ERISA preemption). At the pleading stage, the court may dismiss state law claims on motions pursuant to Fed.Rule Civ.Pro. 12(b)(6) where they are preempted by ERISA. *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987); *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659 (4th Cir.1986).

Therefore, at this stage the court must consider directly whether plaintiffs' state law claims are preempted by ERISA.

A. *Standard.* Although Congress intended that Section 514(a) have broad scope, the Supreme Court has held that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding

that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

The Ninth Circuit has interpreted the "relates to" standard for preemption to require that the State law both (1) relate to an ERISA plan and (2) " 'purport [ ] to regulate, directly or indirectly' ERISA plans." *Martori Bros. Distribs. v. James-Massengale*, 781 F.2d 1349, 1356 (9th Cir.) (quoting *Lane v. Goren*, 743 F.2d 1337, 1339 (9th Cir.1984)), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986).

Four categories of state laws have been found to be preempted by Section 514(a): (1) laws that regulate the type of benefits or terms of ERISA plans, *Shaw*, 463 U.S. 85, 103 S.Ct. 2890 (pregnancy benefits required); (2) laws that create reporting, disclosure, funding, or vesting requirement for ERISA plans, *Standard Oil Co. v. Agsalud*, 633 F.2d 760 (9th Cir.1980) (reporting requirements), *judgment aff'd mem.*, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981); (3) laws providing rules for calculation of benefits to be paid under ERISA plans, *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (use of set-off/integration method in computing benefits); (4) laws governing remedies for misconduct growing out of the administration of the ERISA plan. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985) (state common law claims for breach of contract, breach of fiduciary duty, fraud, breach of duty to act fairly and in good faith preempted by ERISA).

The Ninth Circuit has articulated the underlying principle of these categories that "state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is 'part of the administration of an employee benefit plan.' " *Martori*, 781 F.2d at 1358. This standard reflects Congress's intent to prevent two types of abuse of ERISA plans: "mismanagement of funds accumulated to finance [employee] benefits, and failure to pay employees the benefits promised." *Id.* at 1359 (quoting

*California Hosp. Ass'n v. Henning*, 770 F.2d 856, 859 (9th Cir.1985)).

B. *Defendants as Fiduciaries.* An ERISA fiduciary is a person who, with respect to an ERISA plan, "(i) [ ] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [ ] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [ ] has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

It is not disputed by the parties that BEHR and Rowell were retained by plaintiffs to advise the Plan concerning investments and to manage the Plans' assets, and that they were given discretionary authority to make investments on behalf of the Plans subject to the conservative investment objectives and requirements set forth by plaintiffs. Defendants fall squarely within the definition of an ERISA fiduciary under section 1002(21)(A).

C. *Alleged Misconduct as Breach of ERISA Fiduciary Duty.* An ERISA fiduciary owes to the Plan a duty to act, with respect to the Plan, solely in the interest of the participants and beneficiaries, (1) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims," (2) "by diversifying investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so"; and (3) "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a)(1). Moreover, under section 1105, BEHR and Rowell were acting as co-fiduciaries, each responsible for any breach of fiduciary duty by the other.

Plaintiffs allege in their first claim for relief that defendants violated their fiduciary duty by transferring the Plans' funds from nonequity investments and purchasing speculative corporate stock, in disregard of the known conservative investment objectives of the Plans and in disregard of the trustees' express instructions. Compl. at 4–5, 6–7.

These allegations, if true, support a claim for breach of ERISA fiduciary duties. The alleged misconduct therefore supports a cause of action under ERISA, and will preempt any causes of action under state laws which relate to, or attempt to regulate, the conduct of defendants with respect to the Plans or the investment of the Plans' funds.

■ D. *Preemption of State Law Claims.* Plaintiffs' claims for relief based upon breach of fiduciary duty, fraud, deceit, negligent misrepresentation, negligence, negligent supervision, and breach of contract, all arise from defendants' alleged misconduct in managing and investing the funds of the Plans in violation of plaintiffs' intent and instructions. All such claims therefore "relate to" the administration of an ERISA plan per se. The Supreme Court has held that ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), creates an exclusive remedial scheme. "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987); *see also Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631 (9th Cir.1990).

■ The application of a state law standard of care for fiduciaries to an ERISA fiduciary would be an attempt to indirectly regulate the conduct of ERISA fiduciaries, and would risk the imposition of inconsistent standards and remedies on the administration of ERISA funds. Because ERISA establishes a standard of care for ERISA fiduciaries (including plan investors and advisors) in section 1104, state law standards

of care as applied to the conduct of ERISA fiduciaries are preempted.[1]

In addition, claims of negligence, breach of contract, negligent supervision, fraud, and deceit as applied to such conduct are also preempted, insofar as they too attempt to impose standards or liabilities preempted by ERISA. *Pilot Life Ins.*, 481 U.S. 41, 107 S.Ct. 1549; *Lea,*) 903 F.2d 624 (ERISA preempts employees' state law contract and tort claims arising from alleged breach of a termination agreement); *Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987) (ERISA preempts state law claim that employer wrongfully discharged employee in order to prevent him from acquiring retirement benefits).

Moreover, ERISA establishes a comprehensive remedial scheme under section 1109, providing that an ERISA fiduciary who breaches his fiduciary duties under the act is liable for resulting losses to the plan, liable for disgorgement of unjust profits from the violation, and "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). This broad range of available remedies is further evidence of Congressional intent that attempts to seek remedies under state law be preempted.[2]

For the above reasons, the court GRANTS defendants' motion to dismiss plaintiffs' fifth, sixth, seventh, eighth and ninth claims as preempted by ERISA. These state law claims are dismissed without prejudice; if during the course of discovery it appears that defendants were not ERISA fiduciaries or that the alleged misconduct was not in their capacity as ERISA fiduciaries, plaintiffs may move to amend their complaint and revive the state law claims.

## II. CLAIMS UNDER FEDERAL AND STATE SECURITIES LAWS.

*A. Section 10(b).* Defendants have moved to dismiss plaintiffs' claim seeking damages for purported violations of Section 10(b) of the Securities Exchange Act of 1934, arguing that plaintiffs have failed to plead such violation with particularity, as required by Fed.R.Civ.P. 9(b).

▪ To state a claim for liability under section 10(b), plaintiffs must allege: (1) a false statement of material fact or omission of such fact by persons who reasonably owed plaintiffs a duty to disclose; (2) reliance by plaintiffs on the misrepresentation or omission; (3) damages; (4) "that the alleged misrepresentation occurred in connection with the purchase and sale of a security"; and (5) scienter, or an intent to deceive, manipulate or defraud. *Levine v. Diamanthuset, Inc.*, 722 F.Supp. 579, 587 (N.D.Cal.1989) (citing *Toombs v. Leone*, 777 F.2d 465, 468–69 (9th Cir.1985) and *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976)).

▪ Defendants argue that plaintiffs have failed to allege any specific misstatement or omission of material fact "in connection with" the Plans' purchase of any security. They reason that because defendants were given "complete authority" to make investments on behalf of the Plans, plaintiffs had delegated their decision-making authority to defendants and made no investment decisions themselves. Therefore, any alleged misconduct by defendants

---

1. Although a broker who invests plan funds held in a discretionary account is not engaged in the *internal* administration of the plan, i.e., is not regulating, granting or withholding benefits, the investment of plan funds nevertheless fundamentally affects the integrity of those funds. Managing and investing such funds comes within the fiduciary duties specified in ERISA and, therefore, state laws seeking to regulate such management are preempted.

2. Plaintiffs cite only a single California appellate court case, *Duffy v. Cavalier*, 215 Cal.App.3d 1517, 264 Cal.Rptr. 740 (1989), for the proposition that an ERISA trustee's common law claims against a stockbroker for breach of fiduciary duty are not preempted. Even this case, however, is not analogous to the case before the court, since in *Duffy* defendants had successfully moved to dismiss with prejudice the ERISA claims, then sought to argue for ERISA preemption for the first time on appeal. Here, defendants do not seek dismissal of the ERISA cause of action, and the court finds that the facts alleged by plaintiff constitute a cause of action under ERISA.

could not have induced any purchase or sale of securities by plaintiffs, and was not "in connection with" any purchase or sale.

The causal or "in connection with" requirement of an action under 10(b) has been broadly and flexibly construed. *Superintendent of Ins. of New York v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). "When there is a sale of a security and fraud 'touches' the sale, there is redress under section 10(b)." *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir.1981) (citing *Bankers Life and Casualty*, 404 U.S. 6, 92 S.Ct. 165).

Under this broad construction, fraudulent statements or omissions that induce the opening of a discretionary account resulting in specific investments have been held to be "in connection with" the purchase or sale of securities. *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F.Supp. 1391, 1395 (S.D.N.Y.1986) ("[M]isrepresentations and omissions were 'in connection with the purchase or sale of a security' because they allegedly induced plaintiffs to open option and margin accounts."); *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1239–40 (S.D.N.Y.1981) ("The opening of a new account constitutes the 'purchase' of a security where the account is an investment contract." (citing *Troyer v. Karcagi*, 476 F.Supp. 1142, 1148 (S.D.N.Y.1979))).[3]

Plaintiffs have alleged that defendants BEHR and Rowell falsely represented that they would abide by the Trustees' instructions requiring that, at all times, $1 million of the Plans' funds be invested in nonequity investments and that transactions in common stock be made only in stocks that had a Standard and Poors rating of A− or better. They allegedly disregarded these instructions when they sold $500,000 of nonequity investment in order to purchase large amounts of speculative corporate stock, including stock in companies that did not have the required A− rating. Compl. at 4–5. Plaintiffs further allege that had defendants not represented their intent to abide by the Trustees' instructions, they would not have been given discretion to purchase stock on behalf of the Plans. Finally, Plaintiffs allege that as a result, the Plans were exposed to substantial financial risk and suffered monetary damage in the amount of at least $200,000.

Plaintiffs have alleged facts sufficient to support the elements of a claim under section 10(b). Therefore, defendants' motion to dismiss is DENIED.

B. *Section 12(2)*. Section 12(2) of the Securities Act of 1933 imposes liability on a seller who "offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements ... not misleading...." 15 U.S.C. § 77l(2).

Defendants move to dismiss plaintiffs' claim under section 12(2), arguing that plaintiffs do not allege that defendants sold any security to the Plans "by means of" a false or misleading oral communication. Once again, they reason that since defendants had discretion to make investments

---

3. Defendants cite *O'Brien v. Continental Ill. Nat'l Bank and Trust*, 593 F.2d 54 (7th Cir.1979), and *Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.*, 800 F.2d 177 (7th Cir.1986) for the proposition that there is no Section 10(b) liability where the trustees of a pension trust fund have given defendants discretion to make investments on behalf of the Plan. However, both cases are distinguishable from the case before the court. In *O'Brien*, the defendant investment bank was vested with "sole discretionary power" to make purchases and sales of securities on behalf of the fund; plaintiffs had no right to participate in investment decisions, to be consulted about or receive notice of contemplated purchases or sales, or to veto such decisions. *O'Brien*, 593 F.2d at 57. Similarly, in *Kidder Peabody*, the broker had "full discretion to develop and implement a prudent portfolio strategy." *Kidder Peabody*, 800 F.2d at 181. In the present case, however, plaintiffs have alleged that the Trustees set forth specific guidelines and gave express instructions on the permissible scope of investments. Because they did not "relinquish[ ] total control over investment decisions," *O'Brien* and *Kidder Peabody* do not govern. *See Police Retirement System of St. Louis v. Midwest Inv. Advisory Servs.*, 706 F.Supp. 708, 714 (E.D.Mo.1989) (refusing to grant motion to dismiss section 10(b) action under *O'Brien* where trustees had not alleged that they had relinquished total control).

on behalf of the Plans, the decision to invest was defendants', not plaintiffs'; hence it is impossible for defendants to have used misleading oral communications to sell securities to the Plans. MPA in Support of Defendants' Motion to Dismiss and Motion to Strike at 11.

■ This construction of the facts is strained, at best. "[W]hen a broker makes an unauthorized purchase or sale of securities with his customer's assets, that purchase or sale may be attributed to the customer for purposes of satisfying the [purchase or sale requirement under Rule 10b-5]." *Securities Investor Protection Corp. v. Vigman*, 803 F.2d 1513, 1519 (9th Cir.1986) (citing *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith*, 785 F.2d 1274, 1277 (5th Cir.1986). By extension, such transactions should be treated as a sale for the purpose of section 12(2).

■ However, even if plaintiffs are deemed "buyers" of securities under 12(2), plaintiffs have not alleged facts sufficient to establish that defendants acted as "sellers." In *Pinter v. Dahl*, the Court defined "sellers" under Section 12(1) to include both those who pass title to securities and those who solicit a purchase, where liability for solicitation extends only to one who is "motivated at least in part by a desire to serve his own financial interests or those of the securities owner," and does not include a party whose motivation is solely to benefit the buyer. 486 U.S. 622, 647, 108 S.Ct. 2063, 2079, 100 L.Ed.2d 658 (1988). This Circuit has extended *Pinter*'s definition of "seller" to section 12(2) actions. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 536 (9th Cir.1989). Plaintiffs have made no allegations that BEHR and Rowell were acting in the interest of the securities owner, or that they received commissions from the seller.

■ Defendants further argue that Section 12(2) does not apply to post-distribution purchases of securities, citing Congress's intent that the 1933 Act apply only to initial offerings of securities. *Mix v. E.F. Hutton & Co.*, 720 F.Supp. 8 (D.D.C. 1989) (dismissing Section 12(2) claims based upon post-distribution transactions). Were the scope of 12(2) thus limited, defendants' investment activities on behalf of the Plans would not be covered. Although the language of section 12(2) does not limit liability to the sale of initial offerings, several courts have imposed such a limitation based upon the legislative history of the 1933 Act. *See Mix*, 720 F.Supp. at 10–11 (1933 Act affects only new offerings of securities and not ordinary redistributions (citing H.R.Rep. No. 85, 73d Cong., 1st Sess. 5 (1933)); *see also SSH Company v. Shearson Lehman Bros. Inc.*, 678 F.Supp. 1055, 1059 (S.D.N.Y.1987) ("The purpose of the '33 Act was the regulation of the *distribution* of securities. Post-distribution trading is regulated by the '34 Act." (emphasis in original) (citing L. Loss, *Fundamentals of Securities Regulation* (1983) at 92)).

This court also reads the legislative history of the Securities Act of 1933 to restrict liability under section 12(2) to initial offerings of securities and not to trades of listed securities already in the marketplace.

Because plaintiffs have not alleged facts sufficient to establish that defendants are "sellers" under section 12(2), and because legislative history and case law suggest that section 12(2) liability is limited to initial offerings, the motion to dismiss plaintiffs' third claim under section 12(2) is GRANTED.

C. *California Corporations Code.* Plaintiffs have alleged that the unauthorized transactions by BEHR and Rowell constitute violations of California Corporations Code §§ 25216, 25218, 25240, 25401, 25500, 25501, and 25504. Compl. at 11.

■ *Sections 25216 and 25218* impose liability on a broker who induces or attempts to induce the purchase or sale of any security in connection with which the broker engages in any fraudulent, deceptive or manipulative act or practice, or who violates rules promulgated by the commissioner to protect investors.

Defendants have moved to dismiss these claims on the ground that these sections do not provide for private rights of action.

Plaintiffs do not dispute this in their Opposition, stating by implication that they are not bringing their claims "under" those sections. Pl. Opp. at 16.

Therefore, defendants' motion to dismiss that part of plaintiff's state securities fraud claim which asserts violations of sections 25216 and 25218 is GRANTED.

■ *Section 25400.* Corporations Code § 25400 imposes liability on a broker-dealer for the making of a false or misleading statement or omission, which he knew or had reasonable ground to believe was false or misleading, "for the purpose of inducing the purchase or sale of [a] security."

Plaintiffs have alleged that defendants falsely represented that they would abide by the Trustee's investment guidelines and instructions in their management of the Plans' funds. BEHR and Rowell did not have absolute discretion in investment decisions, and because the decision to open a discretionary account with a particular broker has been treated as a "purchase or sale" for purposes of the analogous section of the federal securities law, plaintiffs may be characterized as buyers, and defendants' alleged conduct can be characterized as "for the purpose of inducing the purchase or sale of a security."

Therefore, defendants' motion to dismiss plaintiffs' state securities fraud claim under section 25400 is DENIED.

■ *Section 25401.* California Corporations Code § 25401 prohibits the purchase or sale, or offer of purchase or sale, of a security by means of any written or oral communication which includes an untrue statement or material omission.

Defendants' seek dismissal of plaintiffs' claim under this section on the ground that no securities were bought or sold "by means of" any false communication.

Plaintiffs have asserted that defendants engaged in unauthorized transactions after representing that defendants would adhere to the Trustee's investment instructions. As above, treating plaintiffs' decision to open the discretionary investment account with defendants as tantamount to a purchase or sale, the facts alleged are suffi-cient to support a claim under section 25401.

Therefore, defendants' motion to dismiss plaintiffs' claim under section 25401 is DENIED.

## III. PUNITIVE DAMAGES

■ Defendants' have moved to strike plaintiffs' prayer for punitive damages under ERISA, arguing that punitive damages are not available in ERISA actions.

The language of the Act does not preclude the awarding of punitive damages in an ERISA action. The Supreme Court has not yet ruled on the general availability of punitive damages under ERISA. Although the Court has held that a *beneficiary* is not entitled to recover extracontractual damages *under section 409(a)*, it did not reach the issues (1) whether punitive damages may be recovered when the plan itself is the plaintiff and (2) whether punitives may be recovered under other sections of the statute. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 138, 144 n. 12, 105 S.Ct. 3085, 3088, 3091 n. 12, 87 L.Ed.2d 96 (1985).

The circuit courts have split on these issues. The Fifth Circuit, after considering the reasoning of *Russell*, held that Congress did not intend *plans* to recover punitive damages under either Section 409(a) or Section 502(a)(3) and found that the reference to available "equitable relief" in Section 502(a)(3) does not encompass punitive damages. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises*, 793 F.2d 1456, 1464–65 (5th Cir.1986), *reh'g denied*, 797 F.2d 977, *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

However, the Ninth Circuit has held that punitives may be available under Sections 1132(c) (providing for "such other relief as [the court] deems proper") and 1109(a) (providing for "such ... equitable or remedial relief as the court may deem appropriate....."). *Kuntz v. Reese*, 760 F.2d 926 (9th Cir.1985) (reversing district court's striking of plaintiff's prayer for punitives), *withdrawn and vacated on other*

*grounds,* 785 F.2d 1410 (1986); *see also Winterrowd v. David Freedman & Co.,* 724 F.2d 823, 826–27 (9th Cir.1984) (punitive awards under ERISA available in "very limited circumstances"). The court in *Kuntz* reaffirmed its holding in *Winterrowd* that "Congress intended to permit punitive damages in appropriate cases, and that the punitive damages award is appropriate when a fiduciary has breached its duties." *Kuntz,* 760 F.2d at 938.

In support of their motion to strike, defendants cite *Sokol v. Bernstein,* in which the Ninth Circuit held that a beneficiary is not entitled to recover extracontractual damages under Section 502(a)(3). 803 F.2d 532 (9th Cir.1986). However, *Sokol* is not controlling here, since the court did not reach the case of a *plan* suing under Section *409(a)* for breach of fiduciary duty, and there are strong policy arguments for distinguishing the two kinds of cases.

The intent of Congress in creating ERISA was to safeguard the integrity of benefit plans, and only derivatively to benefit individual beneficiaries. *See, e.g., Sokol,* 803 F.2d at 537. "Allowing the recovery of punitive damages by individual beneficiaries would be antithetical to this purpose as it would allow generous individual recoveries at the expense of the plan as a whole. However, no such conflict exists in cases such as this where the plan itself is the plaintiff and would benefit from any award of punitive damages." *California Digital Defined Benefit Pension Fund v. Union Bank,* 705 F.Supp. 489, 491 (C.D. Cal.1989) (denying bank's motion to strike prayer for punitive damages under ERISA Section 409(a)).

Following Ninth Circuit precedent recognizing the possibility of punitive damages in an appropriate ERISA action, the court DENIES defendants' motion to strike plaintiffs' prayer for punitive damages under the first claim for relief. However, this denial is without prejudice; if, during the course of discovery, it becomes clear that defendants' conduct will not justify the imposition of punitives damages, defendants may renew their motion to strike.

CONCLUSION

For the foregoing reasons, the court:

(1) GRANTS without prejudice defendants' motion to dismiss plaintiffs' fifth, sixth, seventh, eighth and ninth claims for relief under state common law as preempted by ERISA;

(2) GRANTS defendants' motion to dismiss plaintiffs' third claim for relief for violation of section 12(2) of the Securities Act;

(3) DENIES defendants' motion to dismiss plaintiffs' second claim for relief for violation of section 10(b) of the Securities Act;

(4) GRANTS defendants' motion to dismiss plaintiffs' claims under sections 25216 and 25218 of the California Corporations Code;

(5) DENIES defendants' motion to dismiss plaintiffs' claims under sections 25400 and 25401 of the California Corporations Code;

(6) and DENIES without prejudice defendant's motion to strike plaintiffs' prayer for punitive damages under ERISA.

Finally, (7) defendants BEHR and Rowell shall have twenty (20) days from the date of filing of this order to answer plaintiffs' remaining claims for relief.

IT IS SO ORDERED.