896 F.Supp. 844 (1995)
SHEARSON LEHMAN BROTHERS, INC. and Rhoda Israelov, Petitioners,
v.
NEUROSURGICAL ASSOCIATES OF INDIANA, P.C., Neurosurgical Associates of Indiana, P.C. Employees' Money Purchase Plan and Neurosurgical Associates of Indiana, P.C. Employees' Profit Sharing Plan, Respondents.
No. IP 94-900-C-T/G.
United States District Court, S.D. Indiana, Indianapolis Division.
August 3, 1995.
*845 Thomas M. Knepper, Neal Gerber & Eisenberg, Chicago, IL, B. Keith Shake, Henderson Daily Withrow & Devoe, Indianapolis, IN, for plaintiff.
J. Bradley Schooley, Hostetler and Kowalik PC, Indianapolis, IN, for defendant.

ENTRY DISCUSSING MOTIONS REGARDING ARBITRATION AWARD
TINDER, District Judge.

I. Introduction
This matter comes before the court upon Petitioners' motion to vacate an arbitration award. A counter-motion was filed on behalf of Respondents to confirm or, in the alternative, modify or remand the arbitrators' award. The court, having considered the briefs and exhibits finds that the award should be CONFIRMED.

II. Background Facts and Procedural History
This dispute arose out of a series of investments made by Petitioners Shearson Lehman Brothers, Inc. ("Shearson") and Rhoda Israelov ("Israelov") on behalf of Respondents in this case. Respondents are Neurosurgical Associates of Indiana, P.C. ("Associates"); Neurosurgical Associates of Indiana, P.C. Employees' Money Purchase Plan ("Money Purchase Plan"); and Neurosurgical Associates of Indiana, P.C. Employees' Profit Sharing Plan ("Profit Sharing Plan").
Israelov was a licensed associate stockbroker and agent employed in the Indianapolis office of E.F. Hutton Company, Inc. in 1985. In April of that year, Israelov was contacted by Dr. Karl Manders as an officer of Associates and co-trustee of the Money Purchase Plan and the Profit Sharing Plan (the "Plans"). Dr. Manders was interested in transferring the investment function of the Plans to E.F. Hutton. Both Plans were created, sponsored and funded by Associates as qualified plans under the Employees Retirement Income Security Act of 1974 ("ERISA"). In May 1985, Dr. Manders executed an E.F. Hutton Customer Agreement for the Money Purchase Plan which included the following language:
In consideration for your opening and maintaining an account for me it is agreed in respect to any and all accounts, including securities, commodities, commodity futures, whether upon margin or otherwise, which I now have or may at any future time have with you or your successors (hereinafter referred to as "you"):
....
8. This agreement and its enforcement shall be governed by the laws of the State of New York; its provisions shall be continuous and shall inure to the benefit of your present corporation and its successors or assigns.
(Resp'ts' Ex. A.) On the same date a separate account was opened for the Profit Sharing Plan. These accounts were maintained for the Plans by E.F. Hutton and its successor, Shearson.
In November 1992, Respondents submitted a statement of claim to the National Association of Securities Dealers ("NASD") for arbitration, contending that Shearson and Israelov had breached their fiduciary duty pursuant to ERISA and state law by improperly investing in certain limited partnerships.[1] Respondents were not required by their customer agreement to arbitrate this dispute, however, they chose to do so. In connection with the decision to submit the claims to arbitration, Respondents executed Uniform Submission Agreements which provided:
1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims *846 and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.
2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.
3. The undersigned parties agree that in the event a hearing is necessary, ... the arbitration will be conducted in accordance with the Constitution, By-laws, Rules, Regulations and/or NASD Code of Arbitration Procedure of the sponsoring organization.
4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.
(Resp'ts' Ex. C.) Petitioners also submitted Uniform Submission Agreements to the NASD. In connection with Respondents' claims that Petitioners breached their fiduciary duties pursuant to ERISA and state law, Respondents sought compensatory damages, recision of the transactions, restitution of all Shearson's fees and commissions, and punitive damages.
Hearings on these issues were held in front of an arbitration panel. On April 27, 1994, the arbitrators entered their award. They dismissed Respondents' state law claims with prejudice and found Petitioners to be plan fiduciaries under ERISA. The arbitrators awarded Respondents compensatory damages of $160,000.00; punitive damages of $160,000.00 and attorney's fees and expenses of $100,000.00.
Petitioners bring this appeal from the arbitrators' award seeking to set aside the award of punitive damages and attorney's fees. Respondents counter that the decision should be affirmed on those issues, but should be modified or remanded on the issue of restitution damages.

III. Standard of Review
A court reviewing the award of an arbitrator applies a highly deferential standard of review. A district court must confirm an arbitrator's award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10, the section at issue in the case at bar, allows vacating an award "[w]here the arbitrators exceed[] their powers...." Id. at § 10(a)(4).
Petitioners allege that the arbitrators exceeded their power as limited by the law they were interpreting. The more common challenge pursuant to this statutory section is that the arbitrator misinterpreted the contract at issue.[2] Although not the issue in this case, the discussion of the standard of review in contract cases is illustrative of the deference of the reviewing court. As Judge Posner stated in Hill v. Norfolk & W. Ry. Co., 814 F.2d 1192 (7th Cir.1987), that inquiry is extremely circumscribed:
[T]he question for decision by a federal court asked to set aside an arbitration award ... is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive.
Id. at 1195 (citations omitted). Behind this deference rests the notion that the parties executed a contract with an arbitration clause and agreed to be bound by the arbitrator's interpretation of the contract.
When a party challenges the award as exceeding the arbitrators' authority as limited by the law they were interpreting, the courts apply a similarly deferential standard of review. Moreover, in Baravati v. Josephthal, Lyon, & Ross, Inc., 28 F.3d 704 (7th Cir.1994), the Seventh Circuit narrowed the standard of review applicable to this type of *847 case even further. In Baravati, Judge Posner rejected the "manifest disregard of the law" standard as it had been applied in this Circuit, Health Services Management Corp. v. Hughes, 975 F.2d 1253, 1267 (7th Cir. 1992), and as it is applied in other circuits, ARW Exploration Corp. v. Aguirre, 45 F.3d 1455 (10th Cir.1995). The manifest disregard of the law standard mandates vacatur if the arbitrators "deliberately disregarded what they knew to be the law in order to reach the result they did." Hughes, 975 F.2d at 1267 (citations omitted). Judge Posner rejected this test in favor of limiting the inquiry to that set forth in the statute whether "the arbitrator exceeded his power." Baravati, 28 F.3d at 706. In so limiting the inquiry, Judge Posner noted the futility of the "manifest disregard" test:
We can understand neither the need for the formula nor the role that it plays in judicial review of arbitration.... If it is meant to smuggle review for clear error in by the back door, it is inconsistent with the entire modern law of arbitration. If it is intended to be synonymous with the statutory formula that it most nearly resembles  whether the arbitrators "exceeded their powers"it is superfluous and confusing.
Id; see also Brad A. Galbraith, Note, Vacatur of Commercial Arbitration Awards in Federal Court: Contemplating the Use and Utility of "Manifest Disregard" of the Law Standard, 27 IND.L.R. 241 (1993) (discussing the problems with the manifest disregard of the law standard as applied to commercial transactions).
This very limited standard of review is consistent with the policy considerations that support arbitration. Arbitration is an alternative to the courts, not merely an initial step in the litigation process. Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). In the interest of speed and cost reduction, the parties agree to largely forego the review process that might otherwise be available in the court system. The arbitration decision is intended to be binding on both parties. If arbitration is to be an effective tool in reaching swift resolution of disputes and in combating the overcrowding and delay of the court system, it must exist in a separate sphere where only in the most extreme circumstances will the two systems overlap.

IV. Discussion
The arbitrators' award is challenged by both Petitioners and Respondents. First, Petitioners seek to have the punitive damages and the attorneys' fees awards vacated. Conversely, Respondents seek to have the punitive damages and the attorneys' fees awards confirmed but seek to modify and remand the arbitrators' damages award. Each issue will be addressed in turn.

A. Punitive Damages
Petitioners contend that the arbitrators exceeded their authority as limited by the law they interpreted. As a preliminary matter, the court must determine what law is applicable to the dispute. Petitioners assert that pursuant to the customers' agreement executed by Respondents, New York law governs the dispute. Respondents allege conversely that New York law does not control the arbitration because the customer agreement containing the choice of law provision did not contain the arbitration clause.[3] Respondents thus assert that New York law does not apply to the subsequent agreement to arbitrate. The court finds that New York law would govern issues relating to the customer agreement and the transactions arising therefrom. However, this issue is somewhat moot following the Supreme Court's recent decision in Mastrobuono v. Shearson Lehman Hutton, Inc., ___ U.S. ___, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), rev'g, 20 F.3d 713 (7th Cir.1994).
Prior to Mastrobuono, if an arbitration dispute was governed by New York law, the *848 arbitrators were precluded from awarding punitive damages pursuant to the rule set forth in Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976) (holding that courts may award punitive damages, but arbitrators may not). The Seventh Circuit applied the Garrity rule if the agreement to arbitrate had a choice of law provision selecting New York law. Mastrobuono, 20 F.3d 713. The Supreme Court overruled the Seventh Circuit in Mastrobuono and held that choice of law provisions in arbitration agreements that reference New York law:
encompass substantive principles that New York courts would apply, but not [] special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration.
Mastrobuono, ___ U.S. at ___, 115 S.Ct at 1219. Thus, even though the contract interpretation is governed by New York law, the recent Supreme Court precedent shows that, contrary to Petitioners' position, punitive damages are still awardable in arbitration.[4]
Petitioners also argue that punitive damages are precluded by ERISA.[5] In examining this claim, the court notes that even under the less deferential manifest disregard of the law standard, an arbitrator did not exceed his power by simply misinterpreting the applicable law. In Eljer Manufacturing, Inc. v. Kowin Development Corp., 14 F.3d 1250, (7th Cir.1994), the court rejected the Petitioner's request to remand the case based upon a perceived error of law stating:
Eljer's requested remand must also be denied because errors of law alone do not constitute a sufficient basis for remanding the case. In its brief, Eljer goes to great lengths in trying to persuade us that various legal defenses it presented to the arbitrator should have prevailed. Eljer misses the point. Even if its legal defenses were dispositive, the fact that the arbitrator erroneously rejected them does not, by itself, provide grounds for a remand.
Id. at 1255. "Federal courts will not vacate an arbitration award merely because the arbitrator misinterpreted applicable law." National Wrecking Co. v. International Bhd. of Teamsters, 990 F.2d 957, 961 (7th Cir.1993).
Thus, it is clear that Petitioners must show more than misinterpretation of ERISA, more than manifest disregard of ERISA, and more than clear error in interpreting ERISA. Baravati, 28 F.3d at 706. Petitioners must show that ERISA could not be interpreted to allow punitive damages. Petitioners must keep in mind that "the arbitration system is an inferior system of justice, structured without due process, rules of evidence, accountability of judgment and rules of law." Moseley, Hallgarten, Estabrook, & Weeden, Inc. v. Ellis, 849 F.2d 264, 268 (7th Cir.1988) (quoting Stroh Container Co. v. Delphi Industries, Inc., 783 F.2d 743, 751 n. 12 (8th Cir.), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986)).
Although the Seventh Circuit has recently rejected the manifest disregard of the law standard, certain aspects of that area of law are still useful in determining whether the interpreted law limits the arbitrators' power. For example, in order for an arbitrator to manifestly disregard the law, it must be determined that the law was well-defined, explicit and clearly applicable. W.K. Webster & Co. v. American President Lines, Ltd., 32 F.3d 665, 669 (2d Cir.1994). Similarly, for the court to find that arbitrators exceeded their power as limited by the law they were interpreting, the law at issue must be well-defined, explicit, and clearly applicable. An arbitrators' award will only be outside the arbitrators' powers if the legal principal at issue was well-defined, such that no reasonable judge (or arbitrator) could interpret the law the way the arbitrators did. With this highly deferential standard in mind, the court will examine Petitioners' specific claim as to punitive damages.
In support of Petitioners' claim that the arbitrators erred in awarding punitive damages *849 under ERISA, they state that every circuit addressing the issue of punitive damages under ERISA has refused to award them. Petitioners statement suffers from being too broad. Only a few courts have rejected the award of punitive damages to an ERISA qualified plan itself  the situation in this case  rather than the beneficiaries. The language of ERISA does not preclude punitive damages. In fact, 29 U.S.C. § 1109(a) provides that anyone who breaches his fiduciary duty to a plan: "shall be subject to such other equitable or remedial relief as the court deems appropriate...." 29 U.S.C. § 1109(a). The recoverability of punitive damages, pursuant to this section, by a Plan rather than a beneficiary, was left open by the Supreme Court in Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 139 n. 5, 105 S.Ct. 3085, 3088 n. 5, 87 L.Ed.2d 96 (1985). Moreover, the issue has only been rejected by one federal court of appeals. Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456, 1462-65 (5th Cir.1986), cert. denied, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837, and cert. denied, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987). However, several district courts have awarded punitive damages to an ERISA qualified plan where the fiduciaries engaged in extreme conduct. Cox v. Eichler, 765 F.Supp. 601, 611 (N.D.Cal.1990); Schoenholtz v. Doniger, 657 F.Supp. 899, 913-16 (S.D.N.Y.1987); Dooley Assocs. Employees Retirement Plan v. Reynolds, 654 F.Supp. 457, 460-61 (E.D.Mo.1987). These courts have distinguished between the recovery of punitive damages by beneficiaries, which is not permitted by ERISA, and recovery on the part of the plan itself, which they found were awardable. This distinction is based, at least in part, on the finding that Congress's intent in adopting ERISA was to benefit individual beneficiaries only derivatively with the primary intent being to benefit the qualified plans. "Allowing the recovery of punitive damages by individual beneficiaries would be antithetical to this purpose as it would allow generous individual recoveries at the expense of the plan as a whole. However, no such conflict exists in cases such as this where the plan itself is the plaintiff and would benefit from any award of punitive damages." Cox, 765 F.Supp. at 611 (quoting California Digital Defined Benefit Pension Fund v. Union Bank, 705 F.Supp. 489, 491 (C.D.Cal.1989)). Thus, while courts have almost uniformly rejected punitive damages for beneficiaries or participants, it is less clear that they would do so when the plan itself is a party to the litigation. However, regardless of how the courts have addressed this issue, the applicable standard of review does not allow this court to vacate the arbitrators' award.
Even if the courts had overwhelmingly rejected awarding punitive damages to the plans, the court still would not vacate the award. It is irrelevant whether this court, or any other court, has awarded punitive damages in a case such as this, the inquiry is whether the statute could allow such an interpretation. If such an interpretation could not be based upon the statute, which would be the case if, for example, the arbitrator sought to imprison the executives at Shearson, or Ms. Israelov, for their breach of fiduciary duties, then the court might find that the arbitrators had exceeded their authority. However, in this case, where the arbitrators simply (arguably) misinterpreted the law, the court will not disturb the award. To do so would circumvent the purpose of arbitration and make it just another step in the litigation process. Thus, the arbitrators' award of punitive damages is CONFIRMED.

B. Attorney's Fees
Petitioners seek to set aside the award of attorneys' fees on two grounds. First, they argue, much like their argument regarding punitive damages, that ERISA does not provide for an award of attorneys' fees. Second, they argue that Associates, the entity that actually incurred these expenses, was not a party to the arbitration when the award was entered and thus cannot recover fees.
Petitioners first argument fails for the same reason their argument as to punitive damages failed. ERISA could be interpreted to allow for attorneys' fees, thus, the arbitrators' award will not be disturbed. Petitioners also argue that the award is invalid for procedural reasons. Arbitrators are not *850 bound by the same procedural limitations, such as standing and subject-matter jurisdiction, as federal courts. Moseley, Hallgarten, Estabrook, & Weeden, Inc. v. Ellis, 849 F.2d 264, 268-69 (7th Cir.1988). The arbitrators are instead only limited by the agreement to arbitrate. Id. The court also rejects Petitioners' second challenge to the award. There are two possible explanations for why the arbitrators awarded attorneys' fees that were in fact incurred by Associates rather than the Plans. First, the arbitrators could have (erroneously) determined that Associates was a party to the arbitration. This finding may be exhibited by the arbitrators naming Associates in the caption of their award. Even if the arbitrators erroneously reached this conclusion (because although Associates was a party at the outset of the arbitration, it eventually withdrew), the award would still be confirmed. The court cannot vacate an award merely based upon an erroneous finding of fact. National Wrecking Co., 990 F.2d at 961.
Another possible justification for the award is simply that the arbitrators believed that the Plans suffered the attorneys' fees even though they were actually paid by Associates. Without question, the Plans received the benefit of necessary legal representation, regardless of who paid for it. The arbitrators may have inferred that there was an implicit understanding that Associates would be reimbursed for the attorney services it provided. This determination would also be upheld as within the arbitrators' authority. This is not a case where the arbitrators awarded money to some unknown and unknowing third party.
Additionally, Associates was represented throughout the arbitration and to the extent that it paid the expenses, the arbitrators could have found that Associates was a party to the dispute. Again, even if this finding involved a factual error, the arbitrators' determination would be confirmed. National Wrecking Co., 990 F.2d at 961. Thus, the arbitrators' award of attorneys' fees is CONFIRMED.

C. Restitution Damages
Respondents also seek to modify the arbitrators' award. Respondents request a remand on the issue of damages. "Remand for further arbitration is appropriate in only certain limited circumstances such as when an award is incomplete or ambiguous." Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir.1987) (citation omitted). Specifically, Respondents contend that because the damages award only stated: "$160,000.00 as satisfaction of their claims for compensatory damages...." and because restitution is an equitable remedy rather than a legal one, the award should be reopened because the above-quoted language demonstrates that the arbitrators did not reach the equitable issues only the legal ones. The court rejects Respondents' argument.
Respondents' argument assumes that the arbitrators did not address the issue of equitable damages because they did not mention them separately in the award. First, arbitrators are not required to specifically state their justifications for the award. Eljer, 14 F.3d at 1254. In fact, most arbitrators refrain from elaborating on their decisions in order to avoid judicial review. Similarly, although courts treat legal and equitable damages differently, there is no reason why arbitrators must do so. Thus, the arbitrators could have awarded the $160,000.00 in compensation for both legal and equitable damages.[6] Or perhaps the arbitrators simply rejected Respondents' claim for restitution. The court cannot infer a failure to act from the arbitrators' silence. This case is distinguishable from Young Radiator Co. v. International Union, U.A.W., 734 F.2d 321 (7th Cir.1984), a case relied upon by Respondents. Young Radiator involved an issue very different from the case at bar. The issue in that case was whether the arbitrator confined his inquiry to that allowed by the collective bargaining agreement. If an arbitrator exceeds the scope of the collective bargaining agreement, he has exceeded his power pursuant to the statute. The court *851 found that the arbitrator's remedy was inconsistent with his findings as dictated by the agreement. Thus, the court remanded the case to have the arbitrator appropriately address the issue. This case does not involve a similar issue. The arbitrators did not act inconsistent with the arbitration agreement in their failure to award (or mention) restitution damages. The court will not disturb the award on this basis; to do so would involve more judicial review than is permissible in a case of this kind. Accordingly, the arbitrators' award of damages to Respondent is also CONFIRMED.

V. Conclusion
The court finds that the arbitrators' award is CONFIRMED in its entirety. Both parties' motions to alter the award are DENIED. JUDGMENT will be entered accordingly.
NOTES
[1] Respondents alleged that, from 1985 until 1988, $550,940.00 of Plan assets were invested in 26 limited partnerships for which Hutton or Shearson also functioned as broker, selling agent or underwriter.
[2] In this case, the contract to arbitrate was contained in the Uniform Submission Agreement. The dispute does not involve this arbitration contract or the customer agreement.
[3] Respondents also assert that the Customer Agreement only applies to the Money Purchase Plan because it was signed in connection with that account. However, the Agreement would also apply to the Profit Sharing Plan because the Customer Agreement stated that it applied to "any and all accounts ... which I now have or may at any future time have with you or your successors."
[4] The court notes that Indiana law does not preclude an award of punitive damages in this context.
[5] It is interesting to note that in awarding punitive damages the arbitrators relied, at least in part, on a seminar pamphlet created by Shearson.
[6] The court notes that the award amount set forth above is very close to the $169,427.00 requested for "[r]estitution of all compensation received by [Petitioners] without set off for services performed for the plans."