DRS. SELLKE & CONLON, LTD., Plaintiff-Appellant, v. TWIN OAKS REALTY, INC., *et al.*, Defendants-Appellees.

Second District No. 84—1133

Opinion filed April 10, 1986.

Edward A. Cohen, Barry A. Erlich, Jeffrey A. Brown, and John E. Black, all of Engerman, Erlich, Jacobs & Berman, Ltd., of Chicago, for appellant.

Ralph E. Madsen and Cynthia J. Briscoe, both of Madsen, Clark, Baudin & Briscoe, of Crystal Lake, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiff, Drs. Sellke and Conlon, Ltd. (Dr. Sellke), a professional corporation, appeals from an order of the circuit court of McHenry County awarding $1,668.90 in damages to plaintiff in a breach of lease action. On appeal, plaintiff seeks reversal and a new trial, contending punitive damages should have been awarded together with damages for lost profits and for the reduced rental value of the leased premises.

On June 15, 1978, plaintiff entered into a five-year written lease for approximately 900 feet of vacant business space in a building owned by defendants, James and Mary McIntee, through its agent, Twin Oaks Realty, Inc. The parties agreed Dr. Sellke could make alterations and improvements necessary to convert the premises into an orthodontic office.

Construction on the office began June 15, 1978, but was not completed until October 31, 1978, due to restrictions set by McIntee, who also had his law office in the building. McIntee, who was concerned about noise and dirt resulting from the construction, insisted the workers use a 28 inches by 50 inches window in Sellke's office to bring in materials after 8 a.m., rather than the front door; that the carpenters always enter and exit through the window, and work only after 5 p.m.; and that noise be kept to a minimum between 10 a.m. and 4 p.m., even though defendant knew it was necessary to break up the concrete floor to install drains for the dental equipment. He also refused to allow plumbers to shut off the water to make necessary plumbing hookups. Charles Lary, the contractor, testified the construction took two months longer than anticipated due to McIntee's interference.

Dr. Sellke testified that McIntee refused to allow a telephone serviceman to use space above the rear ceiling to install a telephone line to Sellke's office because Sellke had not rented that portion of the building. As a result, the telephone was not installed until late September. As the deadline for publication of a telephone number was early September, plaintiff's phone number was not included in the 1978-79 McHenry telephone directory. However, McIntee testified he

allowed the serviceman to install the telephone "sometime after July 5."

Prior to execution of the lease, McIntee promised to repair the broken front stoop of the premises and its leaking roof. The stoop was never repaired, and the roof was not repaired until fall of 1982. Plaintiff's dental assistants testified that the roof leaked every time it rained for more than 10 minutes, that water stained the walls and carpeting, that buckets had to be set out to collect rain water, and that water dripped into the patients' waiting area where patients were sometimes forced to use umbrellas. Defendant admitted he frequently placed buckets on top of Sellke's suspended ceiling to catch water, observed wet walls and carpets, and noticed water on the chairs in the waiting room.

McIntee also refused to allow Sellke to post his name on the building's business directory, stating Sellke had rented only the office and not the sign. On January 5, 1981, the trial court enjoined McIntee from interfering with plaintiff's right to post his business name on the directory.

Other disputes between the parties centered on McIntee's failure to post exit lights in the hallway; his removal of a posted building permit; his refusal throughout the lease term to repair the air conditioning system and his assertion that it was Sellke's responsibility; his practice of locking the main entry door to the building during plaintiff's business hours, which meant plaintiff's patients could not exit; and McIntee's entry into Sellke's office after hours, thereby setting off plaintiff's burglar alarm. On the last point, the record shows that Sellke was often required to come to the office to turn off the alarm.

At trial, Dr. Sellke made an offer of proof that he had lost approximately 20 patients each month the McHenry office was not open in 1978. He also offered proof that, based on his experience, September and August were the most productive months for acquiring new patients, and offered a five-year breakdown of examinations at the McHenry office to support these assertions. This evidence was excluded by the trial court. Sellke also offered proof that almost all of his examinations lead to the insertion of braces and that his average fee was $1,800. Stating the profit for orthodontal services varies from 45% to 65%, he offered proof that the two-month delay in opening his McHenry office reduced his net income by $16,200 and $23,400. This testimony was also excluded.

Prior to trial, the trial court dismissed counts IV and V of plaintiff's fifth amended complaint, in which plaintiff sought punitive damages for wilful and wanton misconduct by defendant, for failure to

state a claim. At the close of plaintiff's case, the court granted defendant's request for a directed finding that plaintiff had failed to prove a diminution in the market value of the leased premises and refused to permit plaintiff to reopen the proofs to introduce expert testimony on this issue.

After trial, the court found that defendant had breached the lease agreement and awarded $1,668.90 in damages for plaintiff's out-of-pocket expenses, including repair of the desk, carpet and air conditioner, and plaintiff's loss of the use and occupancy of the leased premises for two months. No damages were allowed for plaintiff's lost profits. This appeal followed.

■ Plaintiff first argues the trial court erred in dismissing counts IV and V of his complaint which sought punitive damages. It is well-established that punitive damages are not recoverable in Illinois in breach-of-contract actions, except where the breach constitutes an independent tort and there are sufficient allegations of malice, wantonness or oppression. *Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1093, 468 N.E.2d 414, *appeal allowed* (1984) 101 Ill. 2d 583; *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 829, 444 N.E.2d 657.

Plaintiff must allege facts which would bring its claim for punitive damages under a recognized tort theory such as wilful and wanton misconduct, which is essentially aggravated negligence. (*Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1094, 468 N.E.2d 414, *appeal allowed* (1984), 101 Ill. 2d 583; *Alley v. Champion* (1979), 75 Ill. App. 3d 878, 882, 394 N.E.2d 735.) A complaint for wilful and wanton misconduct is sufficient if its allegations establish reckless disregard for a plaintiff's safety (*Ingram v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 456, 459, 438 N.E.2d 1194, *appeal denied* (1982) 92 Ill. 2d 568; *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015), but an allegation of personal injury is not necessary (*Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 536, 449 N.E.2d 151).

■ Plaintiff raises three bases for its claim of wilful and wanton misconduct: (1) McIntee intentionally disregarded his known duty to protect the safety of plaintiff's property; (2) McIntee intentionally interfered with and caused the termination of plaintiff's business relationships; and (3) McIntee intentionally interfered with plaintiff's prospective business relationship. We find none of these claims to be a sufficient basis for an award of punitive damages.

A motion to dismiss accepts all well-pleaded facts as true, as well as all reasonable inferences favorable to the nonmoving party which

can be drawn from those facts. (*Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 145, 404 N.E.2d 1104; *Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 629, 379 N.E.2d 1206.) Although the pleader need not set forth evidence which would properly be produced during trial, the ultimate facts necessary to support the action must be alleged. *Ingram v. Little Company of Mary Hospital* (1982) 108 Ill. App. 3d 456, 459, 438 N.E.2d 1194, *appeal denied* (1982), 92 Ill. 2d 568.

In support of his initial claim that McIntee's acts sufficiently endangered the safety of himself, his patients, and his property, Sellke cites *Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 468 N.E.2d 414, *appeal allowed* (1984), 101 Ill. 2d. 583. In that case, the reviewing court held that a complaint which alleged breach of contract and the implied warranty of habitability sufficiently alleged the independent tort of wilful and wanton misconduct so as to justify an award of punitive damages. The court relied on the fact that the complaint had contained "detailed factual allegations of the potentially life-threatening structural defects in plaintiffs' homes" (126 Ill. App. 3d. 1089, 1099, 468 N.E.2d 414), such as improperly supported floors, unacceptable foundation supports, uneven floors, part of a fire wall missing, extraordinary flooding, and water and gas leaks. Here, plaintiff alleges only that McIntee failed to fix the roof leak, repair the damaged front stoop, or install exit lights in the hallway. We conclude plaintiff failed to allege facts sufficient to support an action based on wilful and wanton misconduct and do not consider the unhazardous conduct alleged to be sufficient to establish the independent tort.

Plaintiff also requests that this court construe the tort of wilful and wanton misconduct to include intentional interference with contractual relationships and prospective business expectancies or relationships. Plaintiff notes McIntee's harassment of plaintiff's staff, patients and workmen, his refusal to place plaintiff's sign on the building directory, and fix the leaking roof, and his habit of locking the main door during plaintiff's working hours.

■ Although a person's business relationships constitute a valid property interest which is entitled to protection from the unjustified tampering of another (*Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 551, 413 N.E.2d 98; *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 362, 300 N.E.2d 331, *appeal denied* (1973), 54 Ill. 2d 599), plaintiff fails to offer any relevant authority to support this expansion of the tort of wilful and wanton misconduct. Since such conduct is not a recognized basis for an award of

punitive damages, we find the trial court did not err in dismissing counts IV and V of plaintiff's complaint.

 Plaintiff next contends he is entitled to profits lost during the two-month delay caused by defendant's harassment of construction workers. The trial court refused to award damages for lost profits on the ground that such an award would be speculative. Plaintiff asserts he offered sufficient proof of the amount of lost profits. We disagree. We initially note the trial court's exclusion of plaintiff's proof of lost profits does not constitute reversible error. Although the exclusion of noncumulative evidence may constitute error (*LeMaster v. Amsted Industries, Inc.* (1982), 110 Ill. App. 3d 729, 737-38, 442 N.E.2d 1367), our conclusion that an award of lost profits under the evidence would be speculative even if based on plaintiff's proffered evidence renders any error involved harmless.

It is well established that lost profits are not a proper element of damages where proof of those profits is based on speculation or conjecture. (*Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 1050, 465 N.E.2d 113; *Rhodes v. Sigler* (1976), 44 Ill. App. 3d 375, 379, 357 N.E.2d 846, *appeal denied* (1977), 65 Ill. 2d 584.) Although mathematical certainty is not required (*Hemken v. First National Bank of Litchfield* (1979), 76 Ill. App. 3d 23, 27, 394 N.E.2d 868; *Barnett v. Caldwell Furniture Co.* (1917), 277 Ill. 286, 289, 115 N.E. 389), the loss must be proved with a reasonable degree of certainty (*F. E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.* (1982), 105 Ill. App. 3d 1135, 1141, 435 N.E.2d 724; *Student Transit Corp. v. Board of Education* (1979), 76 Ill. App. 3d 366, 369, 395 N.E.2d 69).

 The long-standing rule in Illinois is that lost profits may be a measure of damages where a business is interrupted, but the business must have been established prior to the interruption so that the evidence of lost profits is not speculative. (*Rhodes v. Sigler* (1976), 44 Ill. App. 3d 375, 379, 357 N.E.2d 846, *appeal denied* (1977), 65 Ill. 2d 584; *Favar v. Riverview Park* (1908), 144 Ill. App. 86, 91; *Chapman v. Kirby* (1868), 49 Ill. 211, 219.) Nor is past success in similar enterprises sufficient, as conditions may vary with each endeavor. (*Favar v. Riverview Park* (1908), 144 Ill. App. 86, 91.) Here, plaintiff attempted to prove his lost profits from the two-month delay by citing the average number of new patients acquired each month after the opening and testifying that September and August are the peak months for acquiring new patients. Even if this evidence had been admitted into evidence, it is an insufficient basis for an award of lost profits.

■ In support of his argument, plaintiff cites *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 281 N.E.2d 323, a case actually supportive of defendant's position. In this case, the court awarded lost profits to a theatre which had lost substantial business as a result of noxious odors emitted by defendant's manufacturing plant. In granting the award, the court expressly relied on evidence of the theatre's past profits. (51 Ill. 2d 143, 281 N.E.2d 323.) Here, plaintiff's orthodontic office was a new business, and his offer of proof therefore consisted solely of profits realized after defendant's tortious interference had ceased. This proffered evidence is insufficient to establish plaintiff's lost profits with a reasonable degree of certainty.

■ Plaintiff's final arguments are based on the trial court's refusal to grant damages for the reduction in rental value of the leased premises. The court concluded that evidence of defendant's failure to repair the roof or front stoop, his habit of locking the main door and otherwise harassing plaintiff's staff and patients, and his refusal to allow plaintiff to post his name on the building directory was insufficient to establish a decrease in rental value or a reduction in the market value of the leased premises. See *64 East Walton, Inc. v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 635, 642, 387 N.E.2d 751.

Where a court tries a case without a jury, its findings of fact should not be disturbed unless those findings are against the manifest weight of the evidence. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 318, 469 N.E.2d 183; *MBL (USA) Corp. v. Diekman* (1983), 112 Ill. App. 3d 229, 235, 445 N.E.2d 418, *appeal denied* (1983), 94 Ill. 2d 553.) In light of the paucity of evidence furnished by plaintiff concerning the market value of the leased premises, we cannot say the court's decision was against the manifest weight of the evidence.

■ Plaintiff also contends the trial court abused its discretion by refusing to grant plaintiff's motion to reopen proofs to present expert testimony on the rental value of the premises. Such decisions are within the sound discretion of the court (*In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 52, 448 N.E.2d 545; *Elmhurst-Chicago Stone Co. v. County of Will* (1982), 109 Ill. App. 3d 1029, 1031, 441 N.E.2d 880), but the offer of evidence should not be refused except for the most cogent reasons where the case is tried before the court without a jury (*Harper v. Johnson* (1978), 61 Ill. App. 3d 190, 193, 377 N.E.2d 1288). In rendering its decision, the trial court should consider whether the moving party has provided a reasonable excuse for failing to submit the additional evidence during trial, whether grant-

ing the motion would result in surprise or unfair prejudice to the opposing party, and, if the evidence is of the utmost importance to the movant's case. *In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 249, 470 N.E.2d 551; *Harper v. Johnson* (1978), 61 Ill. App. 3d 190, 193-94, 377 N.E.2d 1288.

Here, plaintiff filed his suit in 1979 and therein set forth his claim for diminished rental value. He had ample time and forewarning to secure an expert witness to support these allegations and failed to provide the court with an excuse for his failure to do so. (See *Western Transportation Co. v. Republic Molding Corp.* (1982), 104 Ill. App. 3d 1081, 1084-85, 433 N.E.2d 1060.) Moreover, it would have been necessary here to continue the trial while plaintiff sought out an expert witness for this purpose. We conclude that the trial court did not abuse its discretion in denying plaintiff's motion to reopen the proofs.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.