994 F.2d 1247
 William A. LESTER, Trustee for the Bankrupt Estate of Daniel
E. Harper, Plaintiff-Appellant, Cross-Appellee,
v.
RESOLUTION TRUST CORPORATION, as Receiver for Arlington
Heights Federal Savings and Loan Association,
Defendant-Appellee, Cross-Appellant.
 Nos. 92-1436 and 92-1561.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 30, 1992.
Decided May 24, 1993.
 
 Thomas A. Doyle, Baker & McKenzie, Terry Rose Saunders, Susman, Saunders & Buehler, George L. Saunders, Jr. (argued), Thomas F. Bush, Jr., Lee A. Monroe, Saunders & Monroe, J. Stephen Walker, Walker, Suriano & Associates, Chicago, IL, for plaintiff-appellant,
 Paul K. Vickrey (argued), William J. McKenna, Jr., John L. Rogers, Robert R. Hall, Jr., Jennifer M. Baratta, Hopkins & Sutter, Chicago, IL, for defendant-appellee.
 Before COFFEY and EASTERBROOK, Circuit Judges, and LAY, Senior Circuit Judge.*
 LAY, Senior Circuit Judge.
 
 
 1
 William A. Lester, trustee for the bankruptcy estate of Daniel E. Harper, filed suit in the Circuit Court of DuPage County, Illinois, against Arlington Heights Federal Savings and Loan Association (Arlington), alleging that Arlington had breached a loan commitment to Harper. A jury verdict was returned in favor of Lester and against Arlington in the amount of $18,645,000. Arlington moved for judgment notwithstanding the verdict (JNOV)[1] or, in the alternative, for a new trial.
 
 
 2
 After judgment had been entered but while the posttrial motions were pending in state court, Arlington was declared insolvent and the Resolution Trust Corporation (RTC) was appointed receiver. Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA),[2] the RTC removed the case to federal district court and renewed its motion for JNOV or for a new trial. The federal district court vacated the state court verdict and granted a new trial. After a second trial, this time in federal district court, the jury returned a verdict for the plaintiff Lester, but awarded zero damages. The RTC moved for JNOV, contending that the evidence was insufficient as a matter of law to show that Harper had fulfilled conditions precedent to Arlington's obligation to fund under the commitment letter. The district court denied the RTC's motion.
 
 
 3
 On appeal Lester contends that the district court erred in ordering a new trial on the state court verdict. In addition, although he did not make a Rule 59 motion for a new trial following the verdict in federal district court, Lester argues that errors in several evidentiary rulings in that trial require a new trial on damages only. The RTC has cross appealed, arguing that the district court erred in denying its motion for JNOV.
 
 I.
 
 4
 In late 1970, Harper, a real estate developer, made plans to develop a shopping mall located in Lake Zurich, Illinois. The mall was to be constructed in three phases on six different lots. Phase I was to be a strip mall and fire station on lots four and six. Phase II was to be an enclosed mini-mall and service station on lots one and seven. Phase III was to include a bank, restaurant, office space and library on lots two and three.
 
 
 5
 In December of 1972, Harper and Arlington's president began discussing the possibility that Arlington would finance a construction loan. On February 16, 1973, Arlington made a one-year commitment to loan Harper $5.3 million at 9.5% for 15 years. Under federal regulations, however, Arlington was prohibited from making land acquisition and infrastructure loans. Harper therefore entered into a one-year loan agreement on June 28, 1973 with another lender, McElvain-Reynolds, to fund $2.3 million to acquire the property and to construct the necessary infrastructure. Harper also obtained a $2.3 million standby commitment from Glen Ellyn Savings and Loan Association in August of 1973, funds with which Harper planned to pay off the McElvain-Reynolds loan.
 
 
 6
 In the fall of 1973, after McElvain-Reynolds funded $1.7 million of the $2.3 million commitment, Harper acquired the land and began working on the infrastructure. In February 1974, the $5.3 million loan commitment from Arlington expired. Work on the infrastructure was not yet complete, however, so Harper could not seek funding under the Arlington commitment. Arlington and Harper therefore agreed to extend the commitment until August 1974 (later extended until October 1974).
 
 
 7
 Meanwhile, the date on the McElvain-Reynolds loan, originally set at June 1, 1974, was extended until July 1, 1974. However, McElvain-Reynolds had never fully funded the infrastructure loan (financing only $1.7 million of the promised $2.3 million) and refused to lend Harper any more money. It is undisputed that Harper was in default on the McElvain-Reynolds loan as of July 1, 1974 and that at least some of the infrastructure work had not yet been completed.[3] The evidence is also clear that Glen Ellyn Savings and Loan Association refused to honor its $2.3 million standby commitment.
 
 
 8
 On July 26, 1974, Arlington gave a second one-year commitment to Harper in the amount of $3,832,000. The loan was described as a construction loan on Zurich Town Mall, lot numbers 4 and 6--in other words, Phase I of the project. The interest rate was 10.5% for a term of fifteen years. The commitment letter required an appraisal of the property and stated that the loan amount could not exceed 75% of the appraised value. The loan was made subject to several conditions, two of which are relevant to this appeal. First, Harper was required to maintain sufficient funds on deposit and to post a completion bond. Second, the loan was conditioned on Arlington's obtaining additional lenders to participate in the loan. Harper accepted this second commitment on July 29, 1974.
 
 
 9
 During the summer of 1974, interest rates rose substantially. Arlington was therefore unable to find other lenders interested in participating in the loan at the 10.5% interest rate. In August, Harper and Arlington agreed to a plan to seek participants at an interest rate of 14%. By October 1974, however, Harper had run out of money, and construction on the project ceased. In a letter dated November 23, 1974, Arlington informed Harper that it had found participants at 14%. Shortly afterwards, on December 3, 1974, Harper demanded that Arlington fund under the first $5.3 million commitment letter. In response, Arlington indicated that it would fund under either the first or second commitment letter, "so long as you comply with all terms and conditions required in the respective letter of your choice...." Harper thereafter abandoned the project.
 
 
 10
 In 1975, McElvain-Reynolds foreclosed on the project. In May 1978, Harper filed for bankruptcy. On September 2, 1981, after receiving authorization from the bankruptcy court, Lester, acting as trustee for the bankruptcy estate of Harper, filed a two-count complaint against Arlington in the Circuit Court of DuPage County. Count I alleged that Arlington breached the second commitment letter by failing to lend Harper the $3.8 million. The second count was a tort claim, alleging that the breach was intentional. Arlington subsequently filed a third-party complaint against Harper to collect a loan commitment fee. Finally, Harper in his individual capacity was permitted to add a $20 million fraud claim against Arlington on the first day of trial.
 
 
 11
 A trial was held in the fall of 1989 in the Illinois circuit court. The jury heard evidence pertaining to both the contract and tort claims brought by the trustee as well as evidence pertaining to Harper's individual fraud claim against Arlington. The jury also heard testimony on Harper's damages, including lost profits, not only from Phase I, but also from Phases II and III of the project as well.
 
 
 12
 After the parties had rested but before the case was submitted to the jury, the state court dismissed Lester's tort claim. The jury returned a verdict for Lester and against Arlington in the amount of $18,645,000 on the breach of contract claim. It found for Harper and against Arlington on Arlington's third party claim for a loan commitment fee, and for Arlington and against Harper on Harper's individual fraud claim.
 
 
 13
 Judgment was entered on November 8, 1989.[4] On December 7, 1989, Arlington made timely motions for JNOV or, in the alternative, for a new trial. At the close of business on that same day, however, Arlington was declared insolvent and the RTC was appointed receiver. The RTC removed the case to federal district court the next day (December 8, 1989), and subsequently renewed the motions for JNOV or alternatively for a new trial. The federal district court, the Honorable William T. Hart presiding, denied the motion for JNOV, but granted the RTC's motion for a new trial and vacated the $18,645,000 jury verdict. Lester v. Resolution Trust Corp., 125 B.R. 528 (Bankr.N.D.Ill.1991). Judge Hart reasoned that (1) the expert testimony on damages was speculative and included Phases II and III, while the commitment letter at issue pertained only to Phase I; (2) Harper should not have been permitted to press his individual fraud claim against Arlington, because it belonged to the trustee; and (3) although Lester's tort claim was later stricken before the jury's deliberations, the jury was permitted to hear undifferentiated damage evidence pertaining to the impermissible tort claim.
 
 
 14
 In the second trial in federal district court, the sole claim made by Lester was based on the alleged breach of contract against Arlington. The judge excluded all damage evidence relating to Phases II and III. He also excluded evidence of lost profits as to Phase I, limiting Lester's damages to the appraised value of Phase I less saved costs. On November 6, 1991, the jury returned a verdict in favor of Lester but awarded zero damages.
 
 
 15
 Thereafter the RTC moved for JNOV, arguing that the evidence showed as a matter of law that two conditions precedent to its obligation to fund the loan had never been fulfilled: (1) Harper did not obtain a completion bond for the construction of the infrastructure or place the required funds on deposit; and (2) despite reasonable, good faith efforts to secure loan participants, Arlington was unable to do so. The district court denied the motion.
 
 II.
 A. Jurisdiction
 
 16
 We must first determine whether FIRREA authorizes the RTC to invoke federal jurisdiction and to remove this case from state court, even after judgment had been entered on the state court verdict. Here, the state court had entered judgment, but post-trial motions were pending.[5] We conclude that removal was proper.
 
 
 17
 In their jurisdictional statements to the court, the parties stated that the federal district court had jurisdiction by virtue of 12 U.S.C. § 1441a(l )(3).[6] This provision authorizes the RTC to remove "any such action, suit, or proceeding," but the words "action, suit, or proceeding" are not defined. Arguably, in using the word any, Congress intended an expansive reading of these terms to include more than just cases that had not yet reached a state court judgment. Indeed, the Fifth Circuit concluded that the same phrase in a different provision of FIRREA permitted the FDIC (as opposed to the RTC) to remove a state court action to federal court, even though the case was then pending before the state's appellate court. See In re Meyerland Co., 960 F.2d 512 (5th Cir.1992) (interpreting 12 U.S.C. § 1819(b)(2)(B)), cert. denied, --- U.S. ----, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993).[7]
 
 B. New trial in federal district court
 
 18
 Upon removal from the state court the district court ordered a new trial, citing several errors in the state trial. Lester now argues that the district court erred and requests that the state court verdict be reinstated. Ordinarily we review the trial court's decision to grant a new trial under the deferential abuse of discretion standard. See Forrester v. White, 846 F.2d 29, 31 (7th Cir.1988). Lester argues that since the federal district judge did not preside over the first trial, deferential review of the district court's ruling should be subject to closer scrutiny. See Finn v. American Fire & Casualty Co., 207 F.2d 113, 116 (5th Cir.1953), cert. denied, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954). In addition, Lester contends the federal district court erred as a matter of law.
 
 
 19
 Under either standard we conclude that the district court did not err when it granted the RTC's motion for a new trial. At the first trial, Lester was permitted to introduce expert testimony on lost profits for Phases II and III of the project. Illinois law does not require lost profits to be proven with absolute certainty, but they must be established "with a reasonable degree of certainty." See Midland Hotel Corp. v. Reuben H. Donnelley Corp., 118 Ill.2d 306, 113 Ill.Dec. 252, 257, 515 N.E.2d 61, 66 (1987); Doctors Sellke & Conlon, Ltd. v. Twin Oaks Realty, Inc., 143 Ill.App.3d 168, 96 Ill.Dec. 633, 638, 491 N.E.2d 912, 917 (1986). Here, it is undisputed that the infrastructure on Phase I of the Zurich Village Mall was never completed and that Harper did not post a completion bond nor place sufficient funds on deposit to insure completion of the infrastructure. We cannot therefore say that the district court erred in concluding that lost profits evidence from Phases II and III of the venture was speculative, particularly where Arlington's commitment letter at issue pertained only to Phase I. See Midland Hotel, 113 Ill.Dec. at 257-58, 515 N.E.2d at 66-67. Any ensuing loss of profit from Phases II and III were not foreseeable by reason of Arlington's refusal to fund the loan; rather, the evidence indicates that Harper's inability to complete the infrastructure was the sole cause of the project's failure.
 
 
 20
 In addition, at the first trial, Lester was permitted to press a tort claim for intentional breach of contract, a cause of action that does not exist under Illinois law. See Morrow v. L.A. Goldschmidt Assocs., Inc., 112 Ill.2d 87, 96 Ill.Dec. 939, 941-42, 492 N.E.2d 181, 183-84 (1986). Although the state judge dismissed this count before the case was submitted to the jury, the jury nevertheless heard evidence of agreements between Arlington and Harper pertaining to other Harper projects (Woodhills Bay Colony and Mohawk Point). Although this evidence was irrelevant to the contract claim in this case (which involved only the Zurich Town Mall project), Lester was permitted to introduce this evidence to support the tort claim, that is, to show Arlington's alleged continuing bad faith in dealing with Harper. Moreover, the state judge improperly allowed Harper individually to press a $20 million fraud claim against Arlington, a claim which belonged only to the bankruptcy estate. See Henderson v. Binkley Coal Co., 74 F.2d 567, 569 (7th Cir.1935). Given these errors in the first trial, we agree with the district court that a new trial was properly ordered.
 
 C. The RTC's motion for JNOV
 
 21
 The RTC argues that the federal district court erred in refusing to grant its motion for JNOV after the second trial. It argues that the evidence is undisputed that Harper failed to meet conditions precedent to Arlington's obligation to fund the loan. The commitment letter contained the following provision:
 
 
 22
 Sufficient funds must be on deposit and a completion bond must be posted to ensure compliance with the Planned Unit Development requirements, ordinances and all other agreements approved by the Village of Lake Zurich, Illinois.
 
 
 23
 The district court denied the motion for JNOV, reasoning as follows:
 
 
 24
 [T]he contract does not set a specific date by which Harper was to make the deposits or provide the bond. On the evidence presented to it, the jury could have found that a point in time was never reached at which Harper would have been obliged to post the bond or make the required deposits. It is a close question, but absent Arlington Heights finding other participants or agreeing to otherwise fund the loan, it was arguable that Harper would not have been obligated to satisfy the bond and fund deposit conditions.[8]
 
 
 25
 This court reviews denials of JNOV motions de novo. Ross v. Black & Decker, Inc., 977 F.2d 1178, 1182 (7th Cir.1992). In reviewing a ruling on a motion for JNOV, this court must consider all the evidence together with all reasonable inferences in the light most favorable to the non-moving party. Ramsey v. American Air Filter Co., 772 F.2d 1303, 1307 (7th Cir.1985).
 
 
 26
 We conclude that the district court erred in refusing to grant the RTC's motion for JNOV. The condition at issue required Harper to place sufficient funds on deposit and to post a completion bond. Neither of these requirements was ever met. The evidence is clear that a completion bond for the required infrastructure was never posted; moreover, Harper did not place the necessary funds on deposit nor did he have the funds to do so. The district court so found, and in his brief to this court, plaintiff does not argue that these requirements were in fact met.
 
 
 27
 The commitment letter as well as the evidence in the record demonstrate that the bond and fund deposit requirements were clearly conditions precedent. Arlington was prohibited from making infrastructure loans. Thus, in order to make certain that the funds it disbursed to Harper were not used for that proscribed purpose, Arlington required sufficient funds to be on deposit and a completion bond to be posted in order "to ensure compliance with the Planned United Development requirements, ordinances and all other agreements approved by the Village of Lake Zurich, Illinois." If Harper were allowed to fulfill these requirements after Arlington had funded the loan, there would be no guarantee that the money was not being used to complete the infrastructure.
 
 
 28
 In denying the motion, however, the district court reasoned that the jury could have found that "a point in time was never reached at which Harper would have been obliged to post the bond or make the required deposits." Thus, the district court determined that Harper's failure to meet the conditions was essentially excused. We think this analysis is erroneous. If a point in time was never reached at which Harper was required to meet these conditions precedent, then the point in time was never reached at which Arlington was obligated to fund the loan. Harper's failure to perform the bond and fund deposit conditions left the commitment letter "neither enforceable nor effective." Jones v. Seiwert, 164 Ill.App.3d 954, 115 Ill.Dec. 869, 872, 518 N.E.2d 394, 397 (1987). As the Illinois Court of Appeals succinctly stated: "A condition precedent is one which must be performed before ... the other party is obligated to perform. If the condition remains unsatisfied, the obligations of the parties are at an end." McKee v. First Nat'l Bank of Brighton, 220 Ill.App.3d 976, 163 Ill.Dec. 389, 394, 581 N.E.2d 340, 345 (1991) (citation omitted).
 
 
 29
 Under the facts of this case, the bond and fund deposit conditions were clearly intended to be performed prior to Arlington's obligation to fund the loan. The fact that Harper did not perform these conditions meant that Arlington's duty to make the loan never matured. Thus, there was no breach when the loan was not made.
 
 
 30
 In essence, we hold that the defendant did not breach any duty owed to the plaintiff. Thus, the verdict for zero damages, although in favor of the plaintiff, is under the circumstances, the equivalent of a judgment for the defendant. The defendant has not argued any collateral consequences that might flow from the form of the judgment and on that basis we believe that the judgment for zero dollars may be affirmed. Under these circumstances, the cross appeal of the defendant is mooted and therefore ordered dismissed.
 
 
 31
 The judgment is affirmed.
 
 
 
 *
 Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation
 
 
 [1]
 The RTC's motion for JNOV was filed November 13, 1991. On December 1, 1991, Federal Rule of Civil Procedure 50(c) was amended to reflect that a judgment notwithstanding the verdict would be called a judgment as a matter of law
 
 
 [2]
 Pub.L. No. 101-73, 103 Stat. 183 (1989), codified in relevant part at 12 U.S.C. § 1811 et seq. and § 1441a et seq
 
 
 [3]
 Harper admitted that as of July 1, 1974, the main road leading into the project had not been widened, no traffic lights had been installed, and the retaining wall (bin wall) was not yet done
 
 
 [4]
 The record on this point is unclear. The jury returned its verdict on November 8, 1989. After the jury was polled, the judge stated in open court, "Judgment will be entered on all the verdicts." He then issued an oral order staying execution of the judgment for 30 days. The next day, November 9, 1989, the court entered written orders evidencing the 30-day stay of execution (through December 8, 1989)
 On November 16, plaintiff appeared before the state court ex parte and requested that Arlington be required to post a bond in connection with the stay of execution. The judge issued an order requiring Arlington to post a bond, but providing that the stay of execution was to remain in effect for another six days during which time Arlington could deposit the bond. The court executed five memoranda of judgment, which Lester then recorded in five counties, despite the stay of execution. (These were later vacated.)
 On November 22, Arlington moved to vacate the November 16, 1989 order because it had been entered ex parte. The court vacated the earlier order and issued four written orders, again entering judgment on the verdicts from the trial. As with the earlier judgment, the judge again stayed execution of these judgments until December 8, 1989.
 
 
 [5]
 At oral argument, we inquired about the propriety of removal under these circumstances. At the court's direction, the parties filed supplemental briefs on jurisdiction
 
 
 [6]
 12 U.S.C. § 1441a(l )(3) provides in pertinent part:
 The [RTC] may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States District Court for the District of Columbia, or if the action, suit, or proceeding arises out of the actions of the [RTC] with respect to an institution for which a conservator or a receiver has been appointed, the United States district court for the district where the institution's principal business is located.
 The RTC did not remove this case to the federal district court for the District of Columbia, but to the Northern District of Illinois, Eastern Division. Under Resolution Trust Corp. v. Lightfoot, 938 F.2d 65, 67 (7th Cir.1991), the RTC may remove a case to the district where the state court suit was pending. Thus, venue was proper if the federal district court had jurisdiction to accept the case.
 
 
 [7]
 Other provisions in FIRREA make clear that the RTC had the authority to remove this case to the federal district court after judgment had been entered. Under FIRREA, the RTC has "the same duties" with respect to Arlington that the FDIC has under specified provisions of the Federal Deposit Insurance Act. See 12 U.S.C. § 1441a(b)(4)(A). One of the specified provisions, 12 U.S.C. § 1821(d)(13)(B), states as follows:
 In the event of any appealable judgment, the [FDIC] as conservator or receiver shall--
 (i) have all the rights and remedies available to the insured depository institution (before the appointment of such conservator or receiver) and the Corporation in its corporate capacity, including removal to Federal court and all appellate rights;
 (emphasis added). Thus, the RTC has the right to remove an "appealable judgment," as it did in the case at bar. See In re Meyerland Co., 960 F.2d 512, 516 n. 7 (5th Cir.1992) (noting in dicta that "[12 U.S.C.] § 1821 makes it clear that the FDIC may remove a suit after judgment"); see also Federal Deposit Ins. Corp. v. Taylor, 727 F.Supp. 326, 328-31 (S.D.Tex.1989) (finding that removal after judgment was entered in state court, but while posttrial motions were pending, was proper under 12 U.S.C. § 1821; moreover, removal did not violate the Seventh Amendment).
 
 
 [8]
 In its motion for JNOV, the RTC contended that a second condition precedent had also been unfulfilled. That condition provided as follows:
 Loan Participation: Because of the high dollar amount of loan requested, it will be necessary to secure additional lending institutions as loan participants. The Association reserves the right to select such loan participants.
 The district court concluded that the jury could reasonably have concluded that Arlington failed to make a reasonable, good faith effort to find additional participants for the loan. The RTC does not raise this argument on appeal and thus we need not discuss it.